UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DAVID R. LANDERS,**

    **Plaintiff,**

    v.                                                                                      Case No. 25-CV-175-SCD

**FRANK J. BISIGNANO,**
**Acting Commissioner of Social Security,**

    **Defendant.**

---

## DECISION AND ORDER

---

      David R. Landers applied for social security disability benefits based on chronic back pain. After a hearing, an administrative law judge denied Landers' claim, finding he could still perform a reduced range of light work. Landers seeks judicial review of that decision, arguing that the ALJ erred evaluating the medical sources' opinions and the Social Security Administration's medical consultants' prior administrative medical findings. Frank J. Bisignano, the Acting Commissioner of the Social Security Administration, contends that substantial evidence supports the ALJ's assessment of Landers' residual functional capacity. I agree with Landers: the ALJ committed reversible error in evaluating the medical sources' opinions. Accordingly, I will reverse the decision denying Landers disability benefits and remand the matter for further proceedings.

### BACKGROUND

      On February 4, 2025, Landers filed this action seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The matter was reassigned

to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 3, 4, 5. Landers filed a brief in support of his disability claim, ECF No. 10; Bisignano filed a brief in support of the ALJ's decision, ECF No. 15; and Landers filed a reply brief, ECF No. 18.

I.   **Personal Background**

Landers was born in 1974. *See* R. 195, 313.[1] Landers graduated high school in 1992 and worked for years as a truck driver. *See* R. 35, 47–51, 236. Landers drove a truck locally for a period, then he drove a flatbed rollback truck hauling wrecked cars for a period working for a few different companies, and then he drove a semi-truck for a sauerkraut manufacturer, which also entailed driving a forklift to load and unload trailers. *See* R. 47–51. When his back pain forced him to stop this kind of work, he briefly worked as a valet at a hospital for four hours per day from December 2020 to July 2021. *See* R. 37, 51–52, 236. During that period, he took eight weeks off to recover from spinal cord stimulator implant surgery. *See* R. 38, 52. The pain interfered with his ability to work as a valet, so now he became self-employed working on his own cars, taking apart cars, and selling car parts. *See* R. 37, 44, 46–47, 52. Landers's reported earnings from self-employment have been approximately two to three thousand dollars each year. *See* R. 52. He has applied for jobs at grocery stores and gas stations even though he believes he wouldn't be able to do that kind of work because of his pain. *See* R. 37. Landers is married and lives with his wife, who is a nurse, and two of his adult children. R. 33–34.

II.   **Medical Background**

---

[1] The transcript is filed on the docket at ECF No. 9-2 to ECF No. 9-11.

Landers struggles with back and leg pain. *See* ECF No. 38. In June 2020, Landers underwent back surgery that included laminectomies at L3-4 and L4-5, and fusion at L5-S1. *See* R. 317, 776. Even after surgery, he continued to experience pain and sought physical therapy and chiropractic treatment. *See* R. 317, 532, 566.

In March 2021, Landers had a spinal cord stimulator implanted. *See* R. 581, 795. On May 10, 2021, Bethany Rothe, PA-C, and Randall Johnson, M.D., recommended a return to work with no restrictions. *See* R. 644. Landers continued experiencing pain and continued treatment for failed back syndrome. *See* R. 566, 573, 576, 649–52, 1025, 1043. In September 2021, Landers had been prescribed acetaminophen, atorvastatin, cyclobenzaprine, gabapentin, and omeprazole and was not interested in pursuing additional pain medications or steroid injections. *See* R. 567–73.

In early September 2021, Landers underwent a functional capacity evaluation with physical therapist Aaron Nelson. R. 551–60. Landers was able to sit and stand for 30 minutes without noted difficulty. R. 551–53. He had difficulty with crouching and forward bending. R. 553. During a six-minute walk test, he walked the first 5 minutes and 40 seconds and rested the last 20 seconds. R. 553. In the "Test Results and Interpretation" section of the functional capacity evaluation, Nelson opined that Landers was capable of kneeling or half-kneeling occasionally.[2] R. 554–55. Nelson opined that Landers was capable of "forward bending-standing" occasionally—presumably this phrase means bending over from a standing position—and recommended that Landers avoid static positioning. *See* R. 554–55. Nelson opined that Landers could rarely crouch or walk and recommended that Landers have a chair

---

[2] According to the functional capacity evaluation's rubric, "occasionally" means 6–33% of the workday. *See* R. 554.

to sit as needed.[3] *See* R. 554–55. Nelson opined that Landers could stand, climb stairs or ladders, and sit without limitation. R. 554–55.

Approximately two years later, in September 2023, Landers underwent a consultative evaluation with Tracy Bretl, D.O. *See* R. 939, 944. Dr. Bretl summarized her physical exam findings and noted that Landers shifted position every ten minutes and had trouble changing positions. R. 943. Dr. Bretl found that Landers could only sit, stand, and walk occasionally due to scoliosis/radiculopathy. R. 943–44.

### III.  Administrative Background

In January 2022, Landers applied for disability insurance benefits, alleging that he became disabled on March 23, 2020. R. 62, 195. He listed these medical conditions on his disability application: back surgery, spine fusion, double laminectomy, spinal cord stimulator implant, and failed back surgery syndrome. R. 235. Landers completed a function report in support of his disability application in September 2022. R. 254. Landers reported experiencing pain after sitting, standing, or walking for more than a few minutes. *See* R. 247–49. Landers estimated that he could walk for ten minutes before needing a break. R. 252. For daily activities, Landers reported watching TV, going outside, doing yardwork or car work, and doing household chores. *See* R. 248–51. Landers reported no problems with personal cares; he was able to manage his money, go to the grocery store, drive, cook, and do dishes, but sometimes his family helped him or activities took longer because of pain. *See* R. 248–51.

Landers completed another function report in July 2023. *See* R. 274. Landers indicated that he couldn't stand, sit, walk, or bend for more than 10 minutes without significant pain.

---

[3] According to the functional capacity evaluation's rubric, "rarely" means 1–5% of the workday. *See* R. 554.

R. 267. Landers's reported activities were similar to those documented on the previous function report. *See* R. 268.

## A. State-agency review

The Social Security Commissioner denied Landers's application at the state agency level of review. Marc Young, M.D., reviewed Landers's medical record and opined that Landers's daily activities suggested adequate functioning despite pain. *See* R. 62, 65. Dr. Young found that Landers had the residual functional capacity to perform light work with several exertional and postural limitations, including limiting standing or walking to 6 hours in an 8-hour workday, and limiting sitting to 6 hours in an 8-hour workday. R. 66.

Landers's application was reconsidered and denied again on September 20, 2023. R. 69. On reconsideration, Karen Schnute, M.D., reviewed Landers's medical record. R. 69. Dr. Schnute found the additional evidence received for reconsideration did not indicate changes in Landers's condition. *See* R. 72, 75. Dr. Schnute slightly changed the exertional and postural limitations from Dr. Young's assessment, finding that Landers could stand or walk for only 4 hours in an 8-hour workday. R. 74

After the Commissioner denied his application at the state-agency level, Landers requested an administrative hearing before an ALJ. R. 105–07.

## B. Administrative Hearing

On May 29, 2024, ALJ Paul Jones held a hearing on Landers's disability application. R. 31. Landers testified at the hearing. R. 32–57. Landers testified that his back went out in March 2020. R. 38. He had a back surgery during 2020 and didn't work for most of that year, then had a spinal cord stimulator implanted in 2021 but still struggled with chronic back pain. *See* R. 38–39. Landers testified that he had applied for jobs at grocery stores and gas stations,

5

but he didn't think he could work anymore due to pain from standing, sitting, bending, and lifting. *See* R. 40. Landers estimated that, in an 8-hour workday, he could stand, walk, or sit for fifteen minutes at a time. *See* R. 57. Landers further estimated that he could alternate between standing, walking, and sitting, doing each activity for fifteen minutes, for a total of 4 hours in an 8-hour workday. *See* R. 57.

The ALJ asked Landers about his work with cars. Landers had a Wisconsin seller's permit for selling car parts at a yearly swap-meet. *See* R. 36. Landers and his wife took out a home equity loan to buy property with a large garage so Landers could work on cars. *See* R. 43. He works on his own cars doing maintenance and repairs and sometimes takes apart old cars to sell the parts. *See* R. 44, 47. The ALJ asked about how Landers does repairs with his physical limitations; Landers said he has a four-post car hoist, he has chairs in the garage to take breaks, sometimes he has help, and the projects take him more time than they used to. *See* R. 44–46.

The ALJ also heard testimony from a vocational expert. *See* R. 53–56. The ALJ presented the vocational expert with a hypothetical person with Landers's age, education, and work experience who could perform light work with several limitations:

- Sit-stand option, at will, so long as not off task for more than 10% of the workday.
- Never climb ladders, ropes, or scaffolds.
- Occasionally climb ropes or stairs.
- Occasionally stoop.
- Occasionally crawl.

R. 55. The vocational expert testified that this hypothetical person could not perform Landers's past work. *See* R. 55. According to the vocational expert, the hypothetical person could work as an office helper, mail clerk, or information clerk. R. 55. The vocational expert

6

testified that those jobs generally allowed for a sit-stand option. *See* R. 56. The vocational expert indicated that no jobs would be available if the person were off task more than 15% of the day or absent more than once per month on a consistent basis. R. 56. The vocational expert also testified that a hypothetical person limited to only occasional sitting, occasional walking, and occasional standing would be capable of part-time work, but these limitations would preclude competitive employment. *See* R. 58.

**C. ALJ's Decision**

Applying the standard five-step analysis, *see* 20 C.F.R. § 404.1520(a), on June 25, 2024, the ALJ issued a written decision finding that Landers was not disabled. *See* R. 12–22. The ALJ determined that Landers met the insured status requirements of the Social Security Act through June 30, 2027. R. 17. At step one, the ALJ determined that Landers had not engaged in substantial gainful activity since the alleged onset date. R. 17. Landers's self-employment earnings were below the substantial gainful activity level. R. 17. At step two, the ALJ determined that Landers had two severe impairments: obesity and failed back syndrome status post lumbar surgeries with spinal cord stimulator. R. 17. At step three, the ALJ determined that Landers did not have an impairment, or combination of impairments, that met or medically equaled the severity of a presumptively disabling impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. R. 17.

The ALJ next assessed Landers's RFC—that is, his maximum capabilities despite his limitations, *see* 20 C.F.R. § 404.1545(a). The ALJ found that Landers had the RFC to perform light work with several limitations:

- At-will sit-stand option, so long as not off task more than 10% of the workday.
- Never climb ladders, ropes, or scaffolds.
- Only occasionally stoop, crawl, or climb ramps or stairs.
- Only frequently balance.

7

R. 18. In assessing that RFC, the ALJ considered Landers's subjective allegations, his daily activities, the medical evidence, and the medical opinion evidence and prior administrative medical findings. *See* R. 18–21.

The ALJ first addressed Landers's treatment history and daily activities after the alleged onset date. *See* R. 18–19. Landers underwent back surgery in June 2020. R. 18. He pursued physical therapy and chiropractic treatment. R. 18. The ALJ also noted that, around that time, Landers reported increased back pain after walking at car shows, sitting in a car, and going shopping for about an hour. R. 18–19. The ALJ noted that, in March 2021, Landers had a spinal cord stimulator implanted. R. 19. The ALJ also observed that the records indicated Landers experienced flare-ups after walking and sitting for long periods at a car show and in Wisconsin Dells, and after working. *See* R. 19. The ALJ noted that in August 2021, an MRI revealed multilevel degenerative disc disease and significant right foraminal narrowing at L4-5. R. 19. Landers was diagnosed with failed back syndrome and continued treatment with physical therapy and chiropractic adjustments. R. 19. The ALJ found that Landers was not interested in additional medications or epidural steroid injections. R. 19. In 2023 and 2024, Landers continued chiropractic treatment. R. 20.

The ALJ also discussed the September 2021 functional capacity evaluation. *See* R. 19. The ALJ summarized the activities from the evaluation but not Nelson's interpretation of the evaluation:

> It was noted that claimant demonstrated smooth and coordinated movement patterns throughout FCE testing. Claimant demonstrated safe and appropriate changes in body mechanics, including use of accessory muscles, counterbalancing and momentum, as load/force increased. Claimant reported increased weakness and back/leg pain with increased activity. He was able to sit and stand for at least thirty minutes without noted difficulty. He was also able to walk nearly six minutes, resting the last twenty seconds. Claimant was also capable of lifting twenty to thirty-five pounds.

8

R. 19.

The ALJ also discussed the consultative exam with Dr. Bretl. R. 19. The ALJ summarized Dr. Bretl's physical exam findings and noted that Dr. Bretl opined that Landers could occasionally sit, stand, and walk due to scoliosis/radiculopathy. *See* R. 19–20. The ALJ found Dr. Bretl's opinion not persuasive because the evidence didn't support the degree of limitation she found. R. 20. Specifically, her "findings were based upon a single presentation and do not reflect the longitudinal treatment history. Claimant complained of persistent back pain but only received conservative treatment postoperatively. He refused pain medication and continued working on his own salvaging automobiles." R. 20.

The ALJ also considered the prior administrative medical findings of state-agency doctors Young and Schnute. The ALJ found those opinions—that Landers was capable of a reduced range of light work—largely persuasive due to their expertise, impartiality, and the consistency of their findings with the rest of the record. R. 20. After finding those opinions persuasive, the ALJ added that Landers required the ability to alternate between sitting and standing at will and could stand or walk for 6 hours in an 8-hour workday. R. 20.

The ALJ determined that the evidence indicated Landers was capable of a reduced range of light work. R. 21. The ALJ noted that physical exams revealed intact strength and sensation and normal gait most of the time without need of an assistive device. R. 20. The ALJ also noted that Landers handles self-care requirements and performs all household chores. R. 20. Landers "reported walking ¼ to ½ mile at one time. Claimant also bought a second property with a large garage so he can maintain his vehicles and disassemble old automobiles to sell the parts. On February 19, 2024, it was noted that claimant worked for

9

himself taking apart cars and selling the parts." R. 20. The ALJ highlighted this evidence as supporting the RFC determination.

The ALJ then continued with the sequential evaluation process. At step four, the ALJ determined that Landers could not perform his past relevant work as a trailer truck driver, flatbed truck driver, or forklift operator. *See* R. 21. The ALJ determined that, considering Landers's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Landers could perform. R. 21–22. Based on those findings, the ALJ determined that Landers was not disabled from the alleged onset date through the date of the decision. R. 22.

The Social Security Administration's Appeals Council denied Landers's request for review, R. 1–3, making the ALJ's decision a final decision of the Commissioner of the SSA, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse a Commissioner's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*,

950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, I must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

Landers presents four problems with the ALJ's decision. First, the ALJ didn't treat physical therapist Nelson's opinion as a medical opinion. Second, the ALJ considered the consistency factor of Dr. Bretl's opinion but didn't address the supportability factor. Third, the ALJ didn't address the supportability of the prior administrative medical findings and failed to explain why he didn't adopt some of their limitations. Fourth, the ALJ limited Landers to a sit-stand option as long as he was not off task more than 10% of the workday but didn't explain this 10% qualification or ask the vocational expert to testify on this issue. Landers raised a fifth issue regarding the vocational expert's methodology that he has withdrawn. *See* ECF No. 19. Landers argues that these issues are reversible legal errors.

### I. The ALJ did not address Mr. Nelson's opinion as medical opinion evidence.

The ALJ summarized the testing done by physical therapist Nelson during the functional capacity evaluation but did not address Nelson's interpretation of the testing—that is, Nelson's medical opinion. Nelson found that Landers could walk "rarely," meaning 1–5% of the workday. *See* R. 554. Nelson's opinion conflicts with the ALJ's conclusion that Landers

11

Case 1:25-cv-00175-SCD  Filed 01/05/26  Page 11 of 18  Document 20

can do a reduced range of "light work," which requires "a good deal of walking or standing." *See* 20 C.F.R. § 404.1567. In deciding Landers's RFC, the ALJ found that Landers could stand or walk for 6 hours in an 8-hour workday so long as he could alternate between sitting and standing. *See* R. 20.

The social security regulations require an ALJ to consider all medical opinions from any medical source. "We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b). "[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). As a physical therapist, Nelson is a medical source, and his evaluation of Landers's abilities is a medical opinion. *See* 20 C.F.R. § 404.1502(d); 20 C.F.R. § 404.1513(a)(2); *Nelson v. Kijakazi*, No. 20-CV-1878-SCD, 2022 WL 795951, at *22–23 (E.D. Wis. Mar. 16, 2022) ("[T]he ALJ must consider a medical opinion offered by a medical source, regardless of whether the medical source is an acceptable medical source.").

The Commissioner does not argue that Nelson is not a medical source, nor that his evaluation is not a medical opinion. Rather, the Commissioner argues that the ALJ implicitly considered Nelson's observations by discussing the tests run during the functional capacity evaluation. *See* ECF No. 15 at 6.

The regulations require articulating how persuasive the ALJ finds each medical opinion at the source level. *See* 20 C.F.R. 404.1520c(b). For example, in *Roddy v. Astrue*, the ALJ "briefly touched" on a medical source's treatment and "alluded to the fact that [the doctor's] deposition testimony was in the record" but did not articulate why he discredited

12

the doctor's testimony. *See Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (applying pre-2017 regulations). And this was a "serious omission." *Id.*; *see also Huber v. Berryhill*, 732 F. App'x 451, 455 (7th Cir. 2018). Similarly, in *Nelson v. Kijakazi*, the Commissioner argued that an ALJ implicitly considered a physical therapist's functional capacity evaluation by discussing physical therapy records generally and that the flexible sit/stand option assessed by the ALJ accommodated the limitations noted in the assessment. *Nelson*, No. 20-CV-1878-SCD, 2022 WL 795951, at *23–24. The court rejected that argument, noting that citing records "does not substitute for a discussion of the functional capacity evaluation findings." *See id.* at 24–26.

An ALJ's failure to address the supportability and consistency of a medical source is legal error. The Seventh Circuit has repeatedly held that administrative error like the one here is subject to harmless-error review and that remand is not required if the reviewing court "can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707–08 (7th Cir. 2013) (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011); *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003)). "[T]he harmless error standard is not . . . an exercise in rationalizing the ALJ's decision and substituting [the reviewing court's] own hypothetical explanations for the ALJ's inadequate articulation." *McKinzey*, 641 F.3d at 892. Rather, the question for a reviewing court "is now prospective—can [I] say with great confidence what the ALJ would do on remand—rather than retrospective." *Id.*

13

The Commissioner does not directly argue that the ALJ's error was harmless. The Commissioner argues that substantial evidence supports the ALJ's assessed RFC. *See* ECF No. 15 at 3, 14.

I cannot say with great confidence that the ALJ would reach the same result on remand without substituting my own hypothetical explanations for how the ALJ considered Nelson's opinions. Nelson's medical opinion conflicted with the ALJ's assessed RFC; specifically, Nelson opined that Landers could rarely walk but could stand and sit without limitation if he could change positions. The ALJ found that Landers could stand or walk for 6 hours in an 8-hour workday alternating positions and did not limit Landers's ability to walk. The VE testified that an RFC of only occasional sitting, occasional walking, and occasional standing would preclude competitive employment, and social security regulations provide that light work requires a "good deal" of walking or standing. I cannot say with great confidence that the ALJ would reach the same result on remand, so this error was not harmless.

## II. The ALJ's decision did not address the supportability of Dr. Bretl's opinions and did not articulate substantial evidence to support the frequency factor.

When an ALJ evaluates medical opinions or prior administrative medical findings, the most important factors are supportability and consistency. An ALJ "will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). Supportability means that "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). An ALJ can, but is not required to, articulate how it considered the relationship between a medical source and the claimant, which includes frequency of examinations, the purpose of the treatment relationship, and

14

whether the medical source examined the claimant. 20 C.F.R. § 404.1520c(c)(3); 20 C.F.R. § 404/1520(b)(2).

The ALJ did not address the supportability of Dr. Bretl's opinion. Dr. Bretl opined that Landers was capable of only occasional sitting, occasional standing, and occasional walking. "Occasionally" means up to one-third of a workday, or two hours. SSR 96-9p, 1996 WL 374185. Dr. Bretl also explained that these limitations were based on her observations and the diagnoses of scoliosis and radiculopathy. Dr. Bretl's opinion is inconsistent with the RFC assessed by the ALJ, which allowed Landers to stand or walk for 6 hours in an 8-hour workday so long as he could alternate between sitting or standing. The ALJ summarized Dr. Bretl's physical exam findings, then found Dr. Bretl's opinion not persuasive because (1) her findings were based on a single presentation and did not reflect the longitudinal treatment history, and (2) her findings were inconsistent with Landers's conservative treatment, his refusing pain medication, and his continuing to work on salvaging cars. The ALJ was silent on the internal supportability of Dr. Bretl's opinion.

This was legal error because the regulations require the ALJ to articulate reasoning on both consistency and supportability. The Commissioner does not directly argue that the error was harmless but rather, as above, that substantial evidence supports the ALJ's assessed RFC. Dr. Bretl's opinion conflicted with the RFC, and I cannot conclude that the result would be the same on remand without substituting my own explanation for the supportability of Dr. Bretl's opinion. The ALJ did not need to credit Dr. Bretl's opinion, but he did need to explain how he considered the supportability factor.

Further, the ALJ's reasoning for discounting Dr. Bretl's opinion lacks substantial evidence. To satisfy the substantial evidence standard, "the ALJ must build an accurate and

15

logical bridge from the evidence to her conclusion. Moreover, an ALJ may not ignore evidence that undercuts her conclusion." *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (citation modified). The ALJ noted that Dr. Bretl's opinion was based on a single presentation and did not reflect the longitudinal treatment history; on the other hand, the ALJ found the state-agency doctors' opinions largely persuasive because of their expertise and impartiality even though, unlike Dr. Bretl, those doctors did not examine Landers. The ALJ did not build an accurate and logical bridge connecting the evidence to his conclusion on the frequency factor.

First, Dr. Bretl's opinion stated that she reviewed all available outside records. *See* R. 939, 944. She summarized the history of Landers's illnesses and daily activities. R. 939. Dr. Bretl had the benefit of the same documents that the state-agency doctors did, so her assessment was not based solely on a single presentation. Second, the ALJ discounted Dr. Bretl's opinion since she examined Landers only once but credited the state-agency doctors who did not even examine Landers a single time. The frequency or infrequency of examinations can contribute to the persuasiveness of a medical source's medical opinion. *See* 20 C.F.R. § 404.1520c(b)(3)(ii). "[T]he opinion of an examining source generally receives more weight than the opinion of a non-examining source, and a conclusion to the contrary requires a good explanation." *Stacy A. v. Berryhill*, No. 17 C 6581, 2019 WL 1746207, at *12 (N.D. Ill. Apr. 18, 2019) (pre-2017 regulations) (citing *Paul v. Berryhill*, 760 Fed. Appx. 460, 2019 U.S. App. LEXIS 4608, 2019 WL 643261, at *3 (7th Cir. Feb. 15, 2019)). Here, however, the ALJ didn't explain why the frequency of examination should serve as a basis to discount Dr. Bretl's opinion but not the state-agency doctors' prior administrative medical findings. *See id.*

The Commissioner argues that the ALJ's assessed RFC was ultimately supported by substantial evidence. Legal error already justifies remand here, and on remand the ALJ should articulate a logical bridge connecting the evidence to his conclusions regarding Dr. Bretl's opinion.

\* \* \*

How much Landers could walk, sit, and stand in a workday was crucial to the RFC. Based on his age, Landers might be disabled if found capable of only sedentary work or capable of only occasional standing, sitting, and walking. Because the ALJ did not address Nelson's opinion as a medical opinion and did not address the supportability of Dr. Bretl's findings, and I cannot predict with great confidence that the decision on remand will be the same, remand is required. Because these issues require remand, I will not address Landers's other arguments.

## CONCLUSION

For all the foregoing reasons, I find that the ALJ committed reversible error. The ALJ did not articulate how he considered the persuasiveness of Nelson's medical opinion as the social security regulations required him to. The ALJ also did not articulate how he evaluated the supportability factor of Dr. Bretl's medical opinion. Finally, the reasoning that he gave to support the frequency factor did not build an accurate and logical bridge between the evidence and his conclusion, falling below what the substantial evidence standard requires.

Thus, I **REVERSE** the Social Security Commissioner's final decision and **REMAND** this action to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision. On

remand, the Commissioner should also address Landers's other claimed errors. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 5th day of January, 2026.

_____
STEPHEN C. DRIES
United States Magistrate Judge